# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs February 5, 2013

## STATE OF TENNESSEE v. JODIE WILLIAMS HENSON

### Appeal from the Circuit Court for Lake County
### No. 11-CR-9604     R. Lee Moore, Jr., Judge

### No. W2012-01489-CCA-R3-CD  - Filed March 21, 2013

The Defendant-Appellant, Jodie Williams Henson, was indicted by a Lake County Grand Jury for vehicular homicide and leaving the scene of an accident involving death.  Pursuant to her plea agreement, Henson entered an open guilty plea to vehicular homicide, a Class B felony, in exchange for a sentence of ten years as a Range I, standard offender, with the manner of service of the sentence to be determined by the trial court.  See T.C.A. § 39-13-213(a)(2).  The charge for leaving the scene of an accident was dismissed upon entry of Henson's guilty plea.  The trial court subsequently ordered Henson to serve her sentence of ten years in the Tennessee Department of Correction.  On appeal, Henson argues that the trial court abused its discretion in denying her a probationary sentence.  Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

John R. Holton, Memphis, Tennessee, for the Defendant-Appellant, Jodie Williams Henson.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; C. Phillip Bivens, District Attorney General; and Lance E. Webb, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**Facts.**  We initially note that Henson did not include the transcript from the April 23, 2012 plea submission hearing in the record on appeal.  However, we gleaned the facts regarding the above offense from the indictment, sentencing hearing transcript, presentence investigation report, and victim impact statements.  As we will explain, we conclude that this

record is sufficient for a meaningful review of the issue on appeal, despite the absence of the transcript from the plea submission hearing.

On March 16, 2011, Henson struck and killed the victim, Ronnie Garden, with her car on Hoecake Road in Lake County, Tennessee, before fleeing the scene of the accident. A few hours later, Henson was arrested. At the time of her arrest, Henson's eyes were "bloodshot[,]" "her speech was slurred[,]" and she was "very unsteady on her feet." Henson later admitted to a Tennessee Bureau of Investigation (TBI) agent that she had used cocaine the night of the offense and had consumed a large amount of rum. The toxicology results from Henson's blood sample, which was taken after her arrest, showed that she had a blood alcohol content of .17 percent and that she had diazepam, nordiazepam, and alprazolam in her system. The autopsy report showed that the victim's cause of death was "blunt force injuries." Victim impact statements showed that the victim and Henson were friends and that Henson had picked up the victim the night before his body was discovered. The victim impact statements from the victim's children, mother, and siblings showed that they had requested that Henson be sentenced to ten years in confinement.

**Sentencing Hearing.** At the June 25, 2012 sentencing hearing, the State admitted the presentence investigation report, which included the victim impact statements, as well as a certified copy of Henson's driving history and documentation from the dismissal of Henson's unrelated domestic assault charge. The State presented testimony from Jerrell Malone, and the defense presented testimony from Henson and Henson's neighbor, Lucille Long.

Jerrell Malone, a probation officer for the Tennessee Board of Probation and Parole, testified that he prepared the presentence investigation report in this case. He stated that on October 18, 2010, Henson's domestic assault charge was dismissed with costs after the case was continued for six months. He acknowledged that dismissal is common in domestic assault cases if the parties have no further problems. Malone said that Henson had told him she began using alcohol at age twelve, used marijuana from age twelve to age twenty, used cocaine for nineteen years, and used Xanax for twenty-three years. Henson told Malone that the last time she used drugs or consumed alcohol was the night of the offense in this case. She also told him that she did not need any drug counseling or rehabilitation because she had stopped using alcohol and drugs while in custody. Malone acknowledged that Henson had told him she obtained her Xanax through a prescription.

Henson testified that she spent over seven months in jail prior to being released on bail. Upon her release, she lived with her sister for the first three months before moving into her own apartment, where she had been living for the last four months. Henson said that going to jail "was a real wake-up call" and that she had not used drugs since her release. She

asserted that she did not need drug or alcohol rehabilitation because she had seen people in her church who had changed their lives by not using drugs. She said she had completely changed her life by attending church, working, and spending time with people who were a good influence on her. Henson stated that within three weeks of being released from jail, she obtained a job as a motel desk clerk. Prior to this job, she had not worked in thirteen years. Henson said that when she is not incarcerated, she cares for her daughter, who has Down's syndrome. She acknowledged that since her arrest, her daughter's father had obtained emergency custody but asserted that her daughter would live with her if the court granted her an alternative sentence.

Henson stated that she had no recollection of the events which led to the victim's death. However, she admitted that her choices caused her to be charged with this crime. Henson then made the following statement to the victim's family: "If I had any wrongdoing in [the victim's death] I ask for forgiveness. I loved him. Maybe not as much as you do, but he was a friend of mine. Thank you." She asked the trial court to place her on probation because she was not the same person she had been at the time of the offense and because she was not a danger to anyone. She said she would be able complete any conditions related to probation, including drug and alcohol rehabilitation.

On cross-examination, Henson admitted telling TBI agents that she had not seen the victim the night of the offense. She maintained that she had "no memory of being around [the victim] that night." However, she acknowledged that she told the agents she had used cocaine and Xanax and had drunk one-half of a fifth of a gallon of alcohol the night the victim was killed. Henson admitted telling the TBI agents that she had been at the Applebee's restaurant the night of the incident, even though she had actually been at Carlton Sullivan's house. She also admitted that she could remember everything that happened that night except for killing the victim.

Lucille Long, who lived in the apartment directly above Henson, testified that she had known Henson for the last four months. She said that Henson lived with her six-year-old daughter, who had Down's Syndrome. Long also said Henson was a very good mother to her daughter and that her daughter needed her. She stated that she saw Henson with her daughter "[s]everal times a day" and that she had never seen Henson under the influence of alcohol or drugs. However, she admitted that she did not know whether Henson consumed alcohol or drugs while in the privacy of her own apartment. Long said she did not believe Henson would be a danger to the community.

The trial court determined that enhancement factor (1), that the defendant had a history of criminal convictions or criminal behavior in addition to that necessary to establish her range, applied to the conviction in this case. See id. § 40-35-114(1) (2006). The court

specifically stated that it applied this enhancement factor because of Henson's criminal behavior, not her convictions. It acknowledged that Henson's criminal history, which consisted of "a couple of bad check charges and a domestic violence charge that was worked out," did not require application of this factor. However, the court stated that Henson's extensive drug abuse required the application of factor (1). The court said it was concerned about Henson's belief that she did not need rehabilitation because individuals with drug and alcohol addictions like Henson's typically were unable to conquer their addictions without some type of rehabilitation.

The court noted that Henson had committed "a very serious offense" and that "incarceration [was] appropriate in this case." In addition, it noted that "we have a significant problem in both Dyer and Lake County, in our district, of alcohol and drug abuse and some of the effects of alcohol and drug abuse." The trial court ultimately determined that Henson was not a proper candidate for probation because "[c]onfinement [was] necessary to avoid depreciation of the seriousness of the offense and . . . [was] necessary to provide an effective deterrence to others for committing that type of crime." See id. § 40-35-103(1)(B). At the conclusion of the hearing, the trial court ordered Henson to serve her ten-year sentence in the Tennessee Department of Correction.

## ANALYSIS

As we previously noted, Henson did not include the transcript from the plea submission hearing in the record on appeal. "[W]hen a record does not include a transcript of the hearing on a guilty plea, the Court of Criminal Appeals should determine on a case-by-case basis whether the record is sufficient for a meaningful review under the standard adopted in Bise." State v. Caudle, 388 S.W.3d 273, 279 (Tenn. 2012); see State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). While noting that appellate courts have the authority to supplement the record pursuant to Tennessee Rule of Appellate Procedure 24(e), the Tennessee Supreme Court stated that it did "not mean to suggest that the Court of Criminal Appeals must or should order supplementation of the record in every case where the appellant fails to provide a transcript of the hearing on a guilty plea." Id. Instead, "[s]upplementation may be considered on a case-by-case basis and should be ordered only if the record is otherwise inadequate to conduct a meaningful appellate review on the merits of the sentencing decision." Id. "If, however, the record is adequate for a meaningful review, the appellate court may review the merits of the sentencing decision with a presumption that the missing transcript would support the ruling of the trial court." Id. (citing State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991)). The court concluded that "the mere fact that the transcript of the submissions hearing was not made a part of the record on appeal should not preclude review under the standard adopted in Bise." Id.

Because we conclude that the record is sufficient for meaningful review under the standard in Bise, we will address the issue presented on appeal.

Henson argues that the trial court's imposition of a sentence of confinement is excessive. Specifically, she contends that her conduct following her arrest, her limited criminal history consisting of only misdemeanors, and her ability to abide by alternative sentencing requirements in prior cases show that she is a worthy candidate for probation. She asserts that since her arrest, she has stopped using drugs and alcohol, has obtained a full-time job, has disassociated herself from the individuals who were a bad influence on her, has surrounded herself with new friends who are a positive influence on her, has leased an apartment, and has begun "living life as a productive citizen for the [first] time in years." She argues that there is no need for her to be confined in order to protect society and that she needs to care for her daughter, who has Down's Syndrome. The State responds that the trial court properly considered the factors related to her suitability for probation before determining that the circumstances of the offense and the need for deterrence required a sentence of confinement in this case. We conclude that the trial court did not abuse its discretion in declining to grant a probationary sentence in this case.

Because of the broad discretion given to trial courts by the 2005 amendments to the sentencing act, "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." Bise, 380 S.W.3d at 706. Moreover, "a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." Id. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." Id. Therefore, this court reviews a trial court's sentencing determinations under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707. In addition, this standard of review applies to a trial court's decision regarding "probation or any other alternative sentence." Caudle, 388 S.W.3d at 278-79. Because the record shows that the trial court carefully considered the evidence, the enhancement and mitigating factors, and the purposes and principles of sentencing prior to imposing a sentence of confinement, Henson has failed "to either establish an abuse of discretion or otherwise overcome the presumption of reasonableness afforded" to the trial court's sentence in this case. Id. at 280.

A trial court must consider the following when determining a defendant's specific sentence and the appropriate combination of sentencing alternatives:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b) (2006). The defendant has the burden of showing the impropriety of the sentence on appeal. Id. § 40-35-401(d) (2006), Sentencing Comm'n Comments.

Any sentence that does not involve complete confinement is an alternative sentence. See generally State v. Fields, 40 S.W.3d 435 (Tenn. 2001). Tennessee Code Annotated section 40-35-102(6)(A) (2006) states that a defendant who does not require confinement under subsection (5) and "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" However, a trial court "shall consider, but is not bound by, the advisory sentencing guideline" in section 40-35-102(6)(A). T.C.A. § 40-35-102(6)(D) (2006). Because Henson entered her guilty plea to a Class B felony, she was not considered a favorable candidate for alternative sentencing.

In determining whether to deny alternative sentencing and impose a sentence of total confinement, the trial court must consider if:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Id. § 40-35-103(1)(A)-(C) (2006); see State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

We note that the trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). The defendant has the burden of establishing suitability for full probation, even if the defendant is considered a favorable candidate for alternative sentencing. See id. (citing T.C.A. § 40-35-303(b)).

Henson argues that the trial court abused its discretion in failing to grant her a probationary sentence. We note that she was eligible for probation because her sentence was ten years or less and the offense for which she was sentenced was not specifically excluded by statute. See T.C.A. § 40-35-303(a) (2006). Although the trial court shall automatically consider probation as a sentencing alternative for eligible defendants, the defendant bears the burden of proving his or her suitability for probation. Id. § 40-35-303(b) (2006). In addition, "the defendant is not automatically entitled to probation as a matter of law." Id. § 40-35-303(b) (2006), Sentencing Comm'n Comments. Rather, the defendant must demonstrate that probation would serve "the ends of justice and the best interests of both the public and the defendant." State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (citations omitted).

When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public. See State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978)). In addition, the principles of sentencing require the sentence to be "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4) (2006). In addition, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed[,]" and "[t]he length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence[.]" Id. § 40-35-103(5). Moreover, our supreme court has held that truthfulness is a factor which the court may consider in deciding whether to grant or deny probation. State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983) (citing State v. Poe, 614 S.W.2d 403, 404 (Tenn. Crim. App. 1981)).

Here, the trial court found that Henson was not a proper candidate for probation because "[c]onfinement [was] necessary to avoid depreciation of the seriousness of the offense and . . . [was] necessary to provide an effective deterrence to others for committing that type of crime." T.C.A. § 40-35-103(1)(B). The court specifically noted that Henson had committed "a very serious offense" and that "incarceration [was] appropriate in this case." We conclude that the trial court did not abuse its discretion in imposing a ten-year sentence of confinement in this case.

Because the record shows that the trial court carefully considered the evidence, the enhancement and mitigating factors, and the purposes and principles of sentencing prior to imposing a sentence of confinement, we uphold Henson's sentence of ten years in the Tennessee Department of Correction. See Bise, 380 S.W.3d at 706. The trial court's judgment is affirmed.

## CONCLUSION

Upon review, we affirm the trial court's judgment.

_____
CAMILLE R. McMULLEN, JUDGE